UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| DENISE DIAZ | : | **ECF Case** |
| | : | |
| Plaintiffs, | : | **13 CV 8281 (PAC)** |
| | : | |
| -against- | : | |
| | : | |
| | : | AMENDED COMPLAINT |
| CITY OF NEW YORK, | : | |
| NEW YORK COUNTY DISTRICT ATTORNEY'S | : | |
| OFFICE, | : | |
| NEW YORK CITY POLICE DEPARTMENT, | : | Jury Demand |
| RAYMOND W. KELLY, individually and in | : | |
| his capacity as the former Commissioner of the | : | |
| New York City Police Department | : | |
| JOSE FLORES, individually and in his official | : | |
| capacity as Investigator for the New York | : | |
| County District Attorney's Office, | : | |
| JOHN DOE 1, individually and in his official | : | |
| capacity as Captain in the NYPD, and | : | |
| JOHN DOE 2, individually and in his official | : | |
| capacity as an Officer in the NYPD or the | : | |
| New York City District Attorney's Office, | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------------x

Plaintiff, Denise Diaz, by her attorney Ricardo A. Aguirre, Esq., complaining of the

Defendants, hereby alleges as follows:

**<u>Preliminary Statement</u>**

1.      This is a civil rights action brought by Plaintiff Denise Diaz, to seek relief for

Defendants violation of her rights, privileges and immunities secured by the Civil Rights Act of

1817, 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments of the United States

Constitution, and the common laws and Constitution of the State of New York.

2.      Upon information and belief, Plaintiff Diaz brings this action to seek redress for acts of unlawful and discriminatory administrative practices, policies and actions by Defendants' that caused Plaintiff to be unlawfully arrested, her home unlawfully searched, her property unlawfully seized, her home telephone unlawfully subjected to surveillance, her reputation defamed and experiencing the loss of career benefits, wages and opportunities. Plaintiff seeks actual, compensatory and punitive damages, injunctive and declaratory relief, and such other relief as this Court deems just and equitable.

## THE PARTIES

3.      Plaintiff Denise Diaz is a female American citizen of Puerto Rican decent that resides in the County of the Bronx and the City and State of New York. Plaintiff Diaz is also a Sergeant in Defendant New York City Police Department.

4.      Defendant City of New York is a municipal corporation duly incorporated under the laws of the State of New York.

5.      Defendant City of New York maintains direct administrative oversight of its two municipal agencies, Defendants New York County District Attorney's Office and New York City Police Department.

6.      Defendant New York City District Attorney's Office (hereinafter referred to as "Defendant DANY"), a department and/or agency of Defendant City of New York, is responsible for the appointment, training, supervision, promotion and discipline of assistant district attorneys and supervisory assistant district attorneys, and their investigators, including the individually named defendants herein.

2.      Upon information and belief, Plaintiff Diaz brings this action to seek redress for acts of unlawful and discriminatory administrative practices, policies and actions by Defendants' that causedPlaintiffto be unlawfully arrested, her home unlawfully searched, her property unlawfully seized, her home telephone unlawfully subjected to surveillance, her reputation defamed and experiencing the loss of career benefits, wages and opportunities. Plaintiff seeks actual, compensatory and punitive damages, injunctive and declaratory relief, and such other relief as this Court deems just and equitable.

## THE PARTIES

3.      Plaintiff Denise Diaz("Plaintiff" or "Ms. Diaz") is a female American citizen of Puerto Rican decent that resides in the County of the Bronx and the City and State of New York. Plaintiff Diaz is also a Sergeant in Defendant New York City Police Department.

4.      Defendant City of New York is a municipal corporation duly incorporated under the laws of the State of New York.

5.      Defendant City of New York maintains direct administrative oversight of its two municipal agencies, Defendants New York County District Attorney's Office and New York City Police Department.

6.      Defendant New York City District Attorney's Office (hereinafter referred to as "Defendant DANY"), a department and/or agency of Defendant City of New York, is responsible for the appointment, training, supervision, promotion and discipline of assistant district attorneys and supervisory assistant district attorneys, and their investigators, including the individually named defendants herein.

2

7.      Defendant New York City Police Department (hereinafter referred to as "Defendant NYPD"), a department or agency of Defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

8.      At all times relevant, Defendant Raymond W. Kelly(hereinafter referred to as "Defendant Kelly") is the former Commissioner of the Defendant NYPD, who was appointed by Defendant City of New York's former Mayor Michael Bloomberg.

9.      That as Defendant NYPD's chief executive officer, Defendant Kelly maintained daily oversight of Defendant NYPD's administration and operations.

10.      As Commissioner of Defendant NYPD, Defendant Kelly instituted administrative policies and procedures that included, but were not limited to, disciplining members of service in Defendant NYPD.

11.      At all times relevant herein, Defendant Kelly was acting as an agent, servant and employee of Defendants City of New York and NYPD and is being sued in his individual and official capacity.

12.      At all times relevant, Defendant Jose Flores (hereinafter referred to as "Defendant Flores"), was an investigator employed by Defendants City of New York and DANY.

13.      At all times relevant herein, Defendant Flores was acting as an agent, servant and employee of Defendants City of New York and DANY, and is being sued in his individual and official capacity.

14.      At all times relevant, Defendant John Doe #1 (hereinafter referred to as "Defendant JD#1"), was an officer or supervisor employed by Defendants City of New York and NYPD.

3

15.     At all times relevant herein, Defendant JD#1 was acting as an agent, servant and employee of Defendants City of New York and NYPD, and is being sued in his individual and official capacity.

16.     At all times relevant, Defendant John Doe #2 (hereinafter referred to as "Defendant JD#2"), was an officer or supervisor employed by Defendants City of New York and NYPD or DANY.

17.     At all times relevant herein, all individual defendants were acting under color of state law.

18.     Defendants are "persons" within the meaning of 42 U.S.C. §2000e (a).

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367 (a).

20.     Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. 1367, for any and all state constitutional and state claims and common law violations pursuant to 28 U.S.C. § 1367, as the common law claims form part of the same case or controversy.

21.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c).

## JURY DEMAND

22.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action on each and every one her claims.

## NOTICE OF CLAIM

23.     Pursuant to the "Continuous Tort Theory", within ninety days after NYPD failed to restore her to full duty after her second request, Plaintiff Diaz filed  a Notice of Claim upon Defendant City of New York by delivering copies of the notices to the person designated by law as a person to whom such claims may be served.

24.     The Notice of Claim was in writing, sworn to by Plaintiff and contained Plaintiff's name and address.

25.     The Notice of Claim set out the nature of the claims, the time when and the place where and manner by which the claim arose, and the damages and injuries claimed to have been sustained by plaintiff.

26.     The City of New York has neglected and failed to adjust the claims within the statutory time period.


## FACTS COMMON TO ALL COUNTS

27.     At approximately 7:50 a.m. on or about November 24, 2010, Plaintiff Diaz's common-law husband, George Castro, was arrested by law enforcement officials for grand larceny in the vicinity of Plaintiff's lawful residence.

28.     Upon hearing commotion outside her home, Plaintiff Diaz left her residence, approached the officers and inquired "What's going on?"

29.     Investigator Michael Wigdor of Defendant DANY told her, "Mind your business. Go back inside! This has nothing to do with you!"

30.     Plaintiff Diaz identified herself to Investigator Wigdor as a NYPD. Officer. With

that, they both proceeded to her residence where Plaintiff Diaz produced her NYPD identification card. In turn, Investigator Wigdor contacted Assistant District Attorney Patty O'Conner of Defendant DANY and stated they would need a search warrant.

31.     During the interim, several other officials from Defendants DANY and NYPD arrived at Plaintiff's residence.

32.     Plaintiff contacted her union attorney, Andrew Quinn, who telephonically directed the officials not to conduct a search without a fully executed warrant.

### *False Arrest*

33.     On or about 8:30 a.m., without probable cause or an arrest warrant, Defendant Flores stated loudly that Claimant was "associating with a known felon" and subsequently informed the Defendant JD#1, assumed to be NYPD 45th Precinct Duty Captain, that Plaintiff Diaz was "Under!"

34.     The term "Under" in police jargon that a person is under arrest.

35.     After conferring with Defendant Flores, Defendant JD#1, without probable cause or arrest warrant, without Plaintiff Diaz's consent, against her will and with the intent to deprive her of her freedom and liberty, directed that Plaintiff Diaz be placed in custody and escorted to and detained at the 43rd Precinct for interrogation. Sergeant Anthony Borelli, Police Benevolent Association Delegate, followed Defendant JD#1's directive and, in fact, transported and escorted Plaintiff Diaz to said police precinct where she was detained.

### *Unlawful Imprisonment*

36.     At approximately 8:50 a.m. on November 24, 2010, Plaintiff Diaz was placed in a police room and was not allowed to leave.

6

37.    Two Internal Affairs Bureau (hereinafter referred to as "IAB") sergeants were posted in said police room and guarded Plaintiff Diaz to prevent her from leaving.

38.    Plaintiff Diaz could not go to the bathroom without being escorted by a police officer and was not allowed to place a phone call.

39.    Plaintiff Diaz received the same treatment as the prisoners that are arrested and held against their will at a police precinct.

40.    At approximately 7:05 p.m. on November 24, 2010, Plaintiff Diaz was released from custody at the 43 Precinct without being charged with a crime or violation.

*Unlawful Search and Seizure*

41.    At approximately 3:00 p.m. on November 24, 2010, while in custody at the 43rd Precinct, union delegate Anthony Borelli informed Plaintiff Diaz that Defendant DANY obtained a search warrant for her residence and Defendant JD#2 conducted the illegal search and seizure.

42.    Plaintiff indicated to Borelli that she wanted to be present in her home when the officers commenced the search of the premises. She was told she could not leave the precinct.

43.    Plaintiff Diaz then requested to see and inspect the search warrant before the search was commenced. That request was also denied.

44.    Upon returning home that evening, Plaintiff Diaz discovered that the officials removed her home computer, two laptop computers, $5,000 in cash, personal financial and insurance documents, credit cards, three cameras, undeveloped film rolls, and money that adorned plaintiff's religious artifacts.

45.    To date, none of these items have ever been returned.

46.    Furthermore, said officials did not leave nor did they ever furnish Plaintiff with a copy of the search warrant.

7

47.     Several months later, George Castro's defense attorney demanded a copy of said search warrant. The District Attorney's office forwarded a copy of the warrant to Mr. Castro's attorney. The attorney, in turn, made a copy for Plaintiff Diaz.

48.     Upon inspection, the information in the search warrant clearly indicates that the warrant was not drafted or executed on November 24, 2011.*(See Plaintiff's Exhibit "A")*.

49.     Said warrant contained specific information that could not have been known the day Plaintiff Diaz was arrested and unlawfully imprisoned.

50.     Furthermore, the warrant does not indicate which judge authorized and signed the warrant.

### *Unlawful Telephone Surveillance*

51.     Shortly after George Castro was arrested on November 2010, Plaintiff Diaz began to notice various odd occurrences with her home telephone transmissions.

52.     Plaintiff noticed long pauses prior to phone calls she made before the other party's phone began ringing.

53.     Plaintiff noticed beeping sounds occurring during her home telephone conversations.

54.     Plaintiff noticed background noise during her home telephone conversations.

55.     Upon information and belief, as well as her law enforcement experience, Plaintiff Diaz concluded her home telephone was subjected to unlawful surveillance by Defendants City of New York, DANY and/or NYPD.

### *Plaintiff Diaz Subsequent Career in Defendant NYPD*

56.     Prior to November 24, 2010, Plaintiff Diaz was and remains an exemplary officer and supervisor in Defendant NYPD.

8

57.    Plaintiff Diaz never received a disciplinary complaint in her 17 year career and always received exceptional evaluations.

58.    Plaintiff was respected and regarded as an excellent and knowledgeable officer by her supervisors, and was studying for the Lieutenant's promotional examination on or about the time George Castro was arrested.

59.    However, since November 24, 2010, Plaintiff Diaz has had her weapon and shield stripped by Defendant NYPD, placed on modified assignment and was not returned to full duty for over three years; even though she has never been charged criminally or administratively by Defendants DANY or NYPD.

60.    Plaintiff Diaz has been subjected to numerous interviews by the Defendant DANY's Office and the Internal Affairs Bureau in Defendant NYPD.

61.    Plaintiff Diaz has been assigned to the undesirable Video Interactive Patrol Enhanced Response Unit (hereinafter referred to as "VIPER") with officers that are considered disciplinary problems, and where one's career virtually ends in Defendant NYPD.

62.    During this period, Plaintiff Diaz inquired on two separate occasions as to why she had not been placed back on full duty, but Defendant NYPD has never responded.

63.    Yet, upon information and belief, male officers that had committed egregious offenses, including but not limited to police brutality, excessive force, theft, drunk driving, domestic violence, perjury, etc., not only kept their guns and shields, but were quickly placed back on full duty once the matter was adjudicated.

64.    Because of said assignment, Plaintiff Diaz lost thousands of dollars in overtime, night differential and promotional pay opportunities.

<u>*Defendant Kelly's Arbitrary and Capricious Disciplinary Policy*</u>

65.     On or about Wednesday, November 16, 2011, journalist Graham Rayman of the

New York Village Voice Newspaper wrote an article entitled "Ray Kelly's Gulag". *(See*

*Plaintiff's Exhibit "B")*

66.     In the article, Rayman wrote:

> *"Police Commissioner Kelly keeps a secret list of police officers who cannot be transferred without his specific approval. The list, which the Voice obtained from a NYPD employee, is part of a 23-page spreadsheet that contains the names of 2,300 officers, their ranks, their ID numbers, old units, new units, and coded descriptions of thousands of personnel decisions throughout the past several years. Strangely, the document isn't marked with any police insignia or command titles."*

67.     The article proceeds to detail of how Defendant Kelly denied transfers and

rejected pending transfers of over 100 officers.

68.     The article also mentions the large number of officers that are transferred to the

VIPER Unit for disciplinary reasons, and whose careers are virtually "frozen" without their

knowledge.

69.     To this date, Defendants City of New York, NYPD and Kelly have not denied the

existence nor the usage of said list.

70.     Upon information and belief, Plaintiff Diaz's name was on Defendant Kelly's

disciplinary list, and Defendant Kelly intentionally and knowingly refused to transfer Plaintiff

Diaz out of VIPER even though she was never charged criminally or administratively.

71.     By reason of the above, Plaintiff Diaz has been irreparably injured physically and

emotionally, and in character and reputation in the community, both professionally and,

otherwise, monetarily.

*Plaintiff Diaz's Present Status in Defendant NYPD*

72.     On or about January 1, 2014, William Bratton replaced Defendant Kelly as Commissioner of Defendant NYPD.

73.     Upon taking office, Commissioner Bratton reviewed Defendant NYPD's disciplinary policy and the number of officers placed on modified assignment for disciplinary reasons.

74.     Shortly thereafter, numerous officers were removed from modified assignment and placed back on full duty.

75.     On March 5, 2014, Defendant NYPD restored Plaintiff Diaz to full duty status, returned her shield and weapon, and assigned her to the 49th Precinct as a Patrol Supervisor.


## FIRST CLAIM
(Claim Pursuant to 42 U.S.C. 1983 Against All Defendants
for Violations of the Fourth Amendment)

76.     Plaintiff repeats and re-alleges paragraphs 1 through75 above as if fully set forth herein.

77.     By their conduct, as described herein, and acting under color of state law to deprive Plaintiff Diaz of her rights to be free from unreasonable searches and seizures, unlawful telephone surveillance, and arrest without probable cause as required by the Fourth and Fourteenth Amendments, Defendants are liable for the violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

78.     Each of the Defendants has acted with deliberate indifference to the Fourth Amendment rights of Plaintiff and other similarly situated individuals. As a direct and proximate

11

result of Defendant's unlawful actions, Plaintiff has suffered, and will continue to suffer damages, including physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## SECOND CLAIM
(Claim Pursuant to 42 U.S.C. 1983 Against All Defendants
for Violations of the Fourteenth Amendment -
Deprivation of Property)

79.     Plaintiffs repeat and re-allege paragraphs 1 through 78 above as if fully set forth herein.

80.     Each of the Defendants has acted with deliberate indifference to the Fourteenth Amendment rights of Plaintiff and other similarly situated individuals. As a direct and proximate result of the acts of each of the Defendants, Plaintiff's Fourteenth Amendment rights have been violated. By acting under the color of law to deprive Plaintiff of her rights under the Fourteenth Amendment, the Defendants are in violation of 42 U.S.C. § 1983, which prohibits deprivation under color of state law of rights secured under the United States Constitution.

81.     Because Defendant's policies, practices and/or customs are without any reasonable and/or articulable purpose, Plaintiff and other similarly situated individuals, cannot alter Defendant's behavior to avoid future violations of their constitutional rights at the hands of Defendants City of New York, DANY and NYPD and their employees, servants and agents.

82.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to her constitutional rights unless Defendants are enjoined from continuing their policy, practice and/or custom of allowing Plaintiff and individuals similarly situated, to remain in prolonged modified duty status and experience wage losses, and that have directly and proximately caused such constitutional violations.

83.    Furthermore, Plaintiff has been seriously damaged in lost wages experienced since November 24, 2010 and will experience future wage losses. Therefore, Plaintiff seeks compensatory damages in the amount to be determined at trial.

### THIRD CLAIM
(Claim Pursuant to 42 U.S.C. 1983 Against All Defendants
for Violations of the Fourteenth Amendment -Equal Protection)

84.    Plaintiffs repeat and re-allege paragraphs 1 through83 above as if fully set forth herein.

85.    Defendants City of New York, DANY, NYPD, Kelly and their employees, servants and agents, sanctioned, encouraged and utilized an arbitrarily and capricious policy and/or practice of keeping Plaintiff Diaz and other individuals similarly situated without being charged with an offense or failing to adjudicate outstanding disciplinary matters in a timely fashion, and failing to equally protect and fairly treat all officers with a sound disciplinary system.

86.    Plaintiff Diaz languished in the VIPER Unit on modified assignment for more than three years without being charged with an offense, while other officers with serious offenses are quickly returned to full duty once their disciplinary matters are adjudicated.

87.    That said modified assignment constructively imprisoned Plaintiff Diaz in her employment in Defendant NYPD, wherein Defendant Kelly, their employees, servants and agents intentionally and knowingly deprived her the right to be justly compensated and work in her full capacity as a Sergeant in Defendant NYPD.

88.    Employees, servants and agents' of Defendants City of New York, its agencies Defendants NYPD and DANY, their constitutional abuses and violations of the Fourteenth Amendment, in their role as state actors and acting under color of law, were and are directly and

proximately caused by policies, practices and/or customs devised, implemented and enforced, encouraged and/or sanctioned by Defendants City of New York.

89.     Each of the Defendants has acted with deliberate indifference to the Fourteenth Amendment rights of Plaintiff and other similarly situated individuals. As a direct and proximate result of the acts of each of the Defendants, Plaintiff's Fourteenth Amendment rights have been violated. By acting under the color of law to deprive Plaintiff of her rights under the Fourteenth Amendment, the defendants are in violation of 42 U.S.C. § 1983, which prohibits deprivation under color of state law of rights secured under the United States Constitution.

90.     Because Defendant's policies, practices and/or customs are without any reasonable and/or articulable purpose, Plaintiff, and other similarly situated individuals, cannot alter Defendant's behavior to avoid future violations of their constitutional rights at the hands of Defendants City of New York, and its agencies Defendants NYPD and DANY, Defendant Kelly and their employees, servants and agents, .

91.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to her constitutional rights unless Defendants are enjoined from continuing their policy, practice and/or custom of failing to administer an equal and fair disciplinary system for Plaintiff and other individuals similarly situated, that have directly and proximately caused such constitutional violations.

## FOURTH CLAIM
(Claim Pursuant to 42 U.S.C. 1983 Against All Defendants
for Violations of the Fourth Amendment – Due Process Rights)

92.     Plaintiffs repeat and re-allege paragraphs 1 through 91 above as if fully set forth herein.

93.     Defendants  City of New York has, acting through its agency Defendant NYPD, developed implemented, sanctioned, encouraged and utilized an arbitrarily and capricious policy and/or practice of  not giving notice to Plaintiff and other individuals similarly situated of their intent and reason to prolong their modified duty status and an opportunity to be heard and appeal said decision.

94.     On November 24, 2010, Plaintiff's career in NYPD constructively ended when she was falsely arrested, unlawfully imprisoned and subsequently placed on modified assignment for over three years without being charged with an offense.

95.     Within those three years, Plaintiff Diaz sent correspondences to NYPD's Deputy Commissioner of Personnel requesting to know how much longer she would remain on modified assignment and requested to be placed back on full duty.

96.     No one in NYPD responded to Plaintiff's requests.

97.     Defendant City of New York, acting through its agency Defendant NYPD, its commissioner Defendant Kelly, their officers, supervisors and executive managers, committed constitutional abuses and violations of the Fourteenth Amendment's Due Process right, in their role as state actors and acting under color of law, were and are directly and proximately caused by policies, practices and/or customs devised, implemented and enforced, encouraged and/or sanctioned by Defendants City of New York.

98.     Each of the Defendants has acted with deliberate indifference to the Fourteenth Amendment – Due Process rights of Plaintiff and other similarly situated individuals. As a direct and proximate result of the acts of each of the Defendants, Plaintiff's Fourteenth Amendment rights have been violated. By acting under the color of law to deprive Plaintiff of her rights under

the Fourteenth Amendment, the defendants are in violation of 42 U.S.C. § 1983, which prohibits deprivation under color of state law of rights secured under the United States Constitution.

99.     Because Defendant's policies, practices and/or customs are without any reasonable and/or articulable purpose, Plaintiff, and other similarly situated individuals, cannot alter Defendant's behavior to avoid future violations of their constitutional rights at the hands of Defendant City of New York, acting through Defendant NYPD and its employees, servants and agents.

100.    Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to her constitutional rights unless Defendants are enjoined from continuing NYPD's policy, practice and/or custom of denying due process rights due to Plaintiff that have directly and proximately caused such constitutional violations.

### FIFTH CLAIM
(Monell Claim)

101.    Plaintiffs repeat and re-allege paragraphs 1 through 100 above as if fully set forth herein.

102.    At all relevant times herein, Defendant City of New York, acting through its agency Defendant NYPD and its commissioner Defendant Kelly, developed, implemented, enforced, and sanctioned de facto policies, practices and/or customs exhibiting deliberate indifferences to Plaintiff's constitutional rights which caused the violation of such rights.

103.    Defendant's unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff Diaz of constitutional rights under the Fourth and Fourteenth Amendments of the U.S. Constitution.

104.    The constitutional abuses and violations by Defendant City of New York, through the actions of Defendants DANY, NYPD, its commissioner Defendant Kelly, were and are directly and proximately caused by policies, practices and/or customs developed, implemented, encouraged, enforced, and sanctioned by Defendant City of New York, including the failure to: (a) to adequately supervise and train its officers and agents, including the Defendants, thereby failing to adequately discourage further constitutional violations on part of their police officers and investigators; (b) to properly and adequately monitor and discipline its officers, including Defendants; and (c) to properly and adequately investigate complaints of police making false arrests and unlawful imprisonment of citizens, acts of misconduct that were tolerated by Defendant City of New York.

105.    Upon information and belief, Defendant City of New York, acting through its agency Defendant NYPD and its commissioner Defendant Kelly, developed, implemented, enforced, encouraged and sanctioned a de facto policy, practice, and/or custom of unlawfully arresting without reasonable suspicion or probable cause, individuals who exercise their rights under the Fourth Amendment.

106.    Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff Diaz of her constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

107.    Defendants have acted with deliberate indifference to Plaintiff's constitutional rights. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused her to suffer physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

108.    Plaintiff Diaz has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from continuing their unlawful polices, practices, and/or customs which have directly and proximately caused such constitutional abuses.

## SIXTH CLAIM
### (Article I, Section 12 of New York State Constitution)

109.    Plaintiffs repeat and re-allege paragraphs 1 through 108 above as if fully set forth herein.

110.    The acts of Defendants, acting under color of law, in subjecting Plaintiff to unlawful search and seizure, unlawful surveillance of her home telephone, and arrest without or probable cause and were designed to, and did cause pain and suffering and emotional distress to Plaintiff in violation of her constitutional rights as guaranteed by Article I, Section 12 of the New York State Constitution.

111.    The foregoing acts and conduct of Defendants were a direct and proximate cause of injury and damage to Plaintiff and violated her rights as guaranteed by the Constitution of the State of New York.

## SEVENTH CLAIM
### (State Causes – Slander)

112.    Plaintiffs repeat and re-allege paragraphs 1 through 111 above as if fully set forth herein.

113.    That on November 24, 2010, Defendant Flores stated loudly that Claimant was "associating with a known felon" and subsequently informed Defendant JD#1 that Plaintiff Diaz

was "Under!" Defendant JD#1, in turn directed that Plaintiff Diaz be placed in custody and detained at the 43rd Precinct for interrogation.

114.   That said words were published by said Defendant to numerous law enforcement officials in Plaintiff's home and were later published to police officers and supervisors in her home command, throughout the Defendant NYPD community and newspapers in the City of New York; despite the fact that at that time the Commanding Officer of the 43rd Precinct and an IAB Detective were relatives that associated with George Castro, but were never charged, arrested for "associating with a known felon", or placed on modified assignment.

115.   That said words were defamatory per se because they concerned and were about Plaintiff Diaz associating with a known felon, a serious employment termination offense in Defendant NYPD,  and that she was a suspect of a crime that warranted her arrest.

116.   That said words were false.

117.   That said false words were made with scienter or knowledge of falsity, falsehood or in the alternative, were so recklessly and wantonly published as to give rise to an inference of malice.

118.   That said Defendants caused actual and emotional damages to the Plaintiff.

## EIGHTH CLAIM
### (State Claims – Injurious Falsehood)

119.   Plaintiff repeats and re-alleges paragraphs 1 through 118 above as if fully set forth herein.

120.   That as a consequence of the foregoing, the words of Defendant Flores were of a kind calculated to ostracize Plaintiff from her NYPD community and alter the remainder of her career.

121.    That as a result of the foregoing, both existing and potential, prospective police officers were prevented or dissuaded from dealing with or interacting with Plaintiff.

122.    That as a result of the foregoing, Defendant Flores damaged Plaintiff in a sum to be determined at trial.

## NINTH CLAIM
(State Claim – Prima Facie Tort)

123.    Plaintiff repeats and re-alleges paragraphs 1 through 122 above as if fully set forth herein.

124.    That the said Defendants intentionally inflicted said harm upon Plaintiff as aforesaid.

125.    That the said Defendants did so for no valid or justifiable excuse.

126.    That as consequences of the foregoing culpable conduct by Defendants, Plaintiff was, in fact, injured and damaged, both economically and non-economically, including suffering and mental anguish.

## TENTH CLAIM
(State Claim – Respondeat Superior)

127.    Plaintiff repeats and re-alleges paragraphs 1 through 126 above as if fully set forth herein.

128.    The conduct of Defendants Kelly, Flores, JD#1, and JD#2 occurred while they were on duty, in and during the course and scope of their duties and functions as a Defendant DANY investigator and Defendant NYPD commissioner and supervisors, and while they were acting as agents and employees of the Defendant City of New York; therefore Defendant City of New York is liable to Plaintiff under the doctrine of respondeat superior.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Denise Diaz demands judgment as follows:

a) A declaratory judgment that the practices complained of herein are unlawful under 42 U.S.C. § 1983, 1985, Fourth and Fourteenth Amendments of the United States Constitution and New York State Constitution.

b) An injunction against Defendants and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

c) Award Plaintiff Diaz compensatory damages against the Defendants, including but not limited to any emotional distress, recompensable costs related to criminal defenses, and any other compensatory damages as permitted by law and according to proof at trial;

d. Award of Plaintiff punitive damages;

e. Award attorney fees pursuant to 42 U.S.C. § 1988;

f. Award costs of suit pursuant to 42 U.S.C. §§ 1920 1988; and,

g. Award such other and further relief as this Court determines to be just and proper.

Dated: Bronx, New York
April 11, 2013

Respectfully submitted,

By:

Ricardo A. Aguirre (RAA 7086)

Law Office of Ricardo Aguirre
*Attorney for Plaintiff*
644 Soundview Avenue, Suite 6
Bronx, New York 10019
Telephone (718) 542-9300

21

Facsimile (718)542-2244
Email: aguirreesq@aol.com