UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DENISE DIAZ,                                              :

                            *Plaintiff,*                 :

        -against-                                        :
                                                         :      13 Civ. 8281 (PAC)
CITY OF NEW YORK, NEW YORK                               :
COUNTY DISTRICT ATTORNEY'S                               :
OFFICE, NEW YORK CITY POLICE                             :      **OPINION & ORDER**
DEPARTMENT, RAYMOND W. KELLY,                            :
individually and in his capacity as the former           :
commissioner of the New York City Police                 :
Department, JOSE FLORES, individually and                :
in his capacity as Investigator for the New              :
York County District Attorney's Office,                  :
JOHN DOE 1, individually and in his official             :
capacity as Captain in the NYPD, and JOHN                :
DOE 2, individually and in his capacity in the           :
NYPD or the New York District Attorney's                 :
Office,                                                  :
                                                         :
                            *Defendants.*                :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-2-15

HONORABLE PAUL A. CROTTY, United States District Judge:

        Plaintiff Denise Diaz ("Diaz") brings this 42 U.S.C. § 1983 action against defendants

New York County District Attorney's Office ("DANY"); Jose Flores ("Flores"), an investigator

with DANY; the City of New York (the "City"); the New York City Police Department (the

"NYPD"); former NYPD Commissioner Raymond W. Kelly ("Kelly"); John Doe #1, a Captain

in the NYPD; and John Doe #2, an employee of either the NYPD or DANY, for various federal

and state constitutional violations arising out of an incident that occurred on November 24, 2010.

Defendants DANY and Flores (collectively, "DANY Defendants") and Defendants Kelly, John

Does #1 and 2, the NYPD, and the City (collectively, "City Defendants") move to dismiss Diaz's

complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  For the following reasons, these motions are

granted, except that the motion addressed to Diaz's false arrest claim against Flores and John

Doe #1 is denied.

## BACKGROUND

Diaz is a sergeant in the NYPD. Am. Compl. ¶ 3.  At 7:50 a.m. on November 24, 2010,

in the vicinity of Diaz's home, Diaz's common law husband, George Castro, was arrested for

grand larceny. *Id.* ¶ 27.  Upon hearing the commotion outside her home, Diaz emerged and

asked, "[W]hat's going on?" *Id.* ¶ 28.  An investigator with DANY responded, "Mind your

business, go back inside!  This has nothing to do with you!" *Id.* ¶ 29.  Diaz informed the

investigator that she was an NYPD officer, and they proceeded to her residence where she

showed him her NYPD identification card. *Id.* ¶ 30.  The Investigator then contacted an assistant

district attorney with DANY and informed him that he would need a search warrant. *Id.*

Meanwhile, additional individuals from DANY and the NYPD arrived at Diaz's home. *Id.* ¶ 31.

Diaz called her union attorney, Andrew Quinn, who "telephonically directed the officials not to

conduct a search without a fully executed warrant." *Id.* ¶ 32.  At 8:30 a.m., Flores stated loudly

that Plaintiff was "associating with a known felon" and informed John Doe #1 (assumed to be

the precinct duty captain) that Diaz was "under," which is to say under arrest. *Id.* ¶¶ 33-34.

After conferring with Flores, John Doe #1 then directed that Diaz be arrested, escorted to the

43rd Precinct, and detained there for interrogation. *Id.* ¶ 35.

At 8:50 a.m., Diaz was placed in a police room guarded by two sergeants from the

Internal Affairs Bureau and was not allowed to leave. *Id.* ¶¶ 36-37.  She could not go to the

bathroom without an officer and was not allowed to make a phone call. *Id.* ¶ 38.  She "received

the same treatment as the prisoners that are arrested and held against their will at a police

precinct." *Id.* ¶ 39.  She was released at 7:05 p.m. without being charged with a crime or

violation.  *Id.* ¶ 40.  Castro was tried and convicted of grand larceny in the first degree, criminal

possession of stolen property, and money laundering.  He was sentenced to a term of 7-21 years

and ordered to make restitution of $1,997,311.  *See* Dkt. 45, Ex. 3.  Plaintiff Diaz has not been

charged with a crime.  Am. Compl. ¶ 59.

      While she was being held at the precinct, Diaz learned that DANY had obtained a search

warrant for her home and that at 3 p.m. John Doe #2 "conducted the illegal search and seizure."

*Id.* ¶ 41.  Diaz said that she wanted to be present during the search of her home, but she was told

she could not leave the precinct.  *Id.* ¶ 42.  She asked to see the search warrant before the search

began, but that request was denied.  *Id.* ¶ 43.  When Diaz arrived home that evening, she

discovered that officials had removed her home computer, two laptops, $5,000 cash, personal

financial, and insurance documents, credit cards, three cameras, undeveloped film rolls, and

money that adorned her religious artifacts.  *Id.* ¶ 44.  These items have never been returned.  *Id.* ¶

45.  The officials "did not leave" and did not supply Diaz with a copy of the search warrant.  *Id.*

¶ 46.  Diaz later obtained a copy of the search warrant from George Castro's attorney.  She

asserts that the warrant "clearly indicates that the warrant was not drafted or executed on

November 24, 2011"[1] because the warrant "contained specific information that could not have

been known the day Plaintiff Diaz was arrested and unlawfully imprisoned" and the warrant

"does not indicate which judge authorized and signed the warrant."  *Id.* ¶¶ 47-50.

      Shortly after this incident in which Castro was arrested, Diaz began to notice long pauses

prior to phone calls, beeping sounds during home telephone conversations, and background noise

---

[1] The Court assumes this is a typographical error and that Diaz intended to write November 24, 2010, the date that appears in the affidavit in support of the search warrant, attached to the complaint as Exhibit A.

during home telephone conversations, all of which led her to "conclude" that her home telephone was subjected to unlawful surveillance by the City of New York, NYPD, and/or DANY. *Id.* ¶¶ 51-55. Prior to the incident, she was an exemplary officer and supervisor in the NYPD with no disciplinary complaint in her seventeen-year career. *Id.* ¶¶ 56-57. After November 24, 2010, and Castro's arrest, Diaz was stripped of her weapon and shield by the NYPD and placed on modified assignment, not returning to full duty for over three years. *Id.* ¶ 59. She was never charged by DANY or the NYPD even though she has been subjected to numerous interviews by DANY and the Internal Affairs Bureau of the NYPD. *Id.* ¶¶ 59-60. She was assigned to the Video Interactive Patrol Enhanced Response Unit ("VIPER"), which is considered "undesirable" and "where one's career virtually ends" in the NYPD. *Id.* ¶ 61. She twice inquired about being placed back on full duty, but received no response. *Id.* ¶ 62. Because of this assignment, she has lost thousands of dollars in overtime, night differential, and promotional pay opportunities. *Id.* ¶ 64.

Diaz contends, based on an article written by journalist Graham Rayman, that Kelly keeps a list of police officers who cannot be transferred without his approval. *Id.* ¶ 65-66. Diaz's name is allegedly on this list, and Kelly "intentionally and knowingly refused to transfer Diaz out of VIPER even though she was not charged criminally or administratively." *Id.* ¶ 70. Diaz was thereby harmed physically and emotionally, in character and reputation, and professionally and monetarily. *Id.* ¶ 71. When Kelly left his position as the Commissioner of the NYPD, Diaz was restored to full duty status at the 49th Precinct as a Patrol Supervisor. *Id.* ¶ 75.

## I.     Applicable Law

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint if a plaintiff fails to "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiffs must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all well-pleaded factual allegations and draw all inferences in a plaintiff's favor. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006). Allegations that are merely conclusory, however, are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

To establish liability under section 1983, a plaintiff must show that (1) the defendant acted under color of state law; and (2) the defendant's actions deprived plaintiff of rights, privileges, or immunities guaranteed by the Constitution. *Washington v. Cnty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004).

## II.    Analysis

### A. Claims against the NYPD and DANY

As an initial matter, the Court dismisses all claims against the NYPD and DANY. Neither of these defendants are suable entities. *See Allyn v. Rockland Cnty.*, 2013 WL 4038602, at *2 (S.D.N.Y. July 30, 2013) ("[A] district attorney's office is not a suable entity."); *Rogers v. N.Y. Police Dep't*, 2012 WL 4863161, at *2 (E.D.N.Y. Oct. 12, 2012) (neither the NYPD nor

5

district attorney's office are suable entities).[2]

**B. Failure to Timely Serve DANY Defendants**

The remaining DANY Defendants move to dismiss the complaint because Diaz failed to

timely serve them.  They argue that Diaz failed to serve them within 120 days of the filing of the

complaint in violation of Fed. R. Civ. P. 4(m), and even after the Court granted additional time

for service, Diaz did not serve DANY Defendants until fifteen days after the extended deadline.

DANY Mem. at 4-6.  However, "district courts may exercise their discretion to grant extensions

under Rule 4(m) absent a showing of good cause under certain circumstances." *Zapata v. City of

N.Y.*, 502 F.3d 192, 193 (2d Cir. 2007).  In considering a discretionary extension, the Court must

consider "(1) whether applicable statutes of limitations would bar the action once re-filed; (2)

whether defendants had actual notice of the claims; (3) whether defendants attempted to conceal

the defect in service; and (4) whether defendants would be prejudiced by extending plaintiff's

time for service." *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 420 (S.D.N.Y.

2013) (alterations omitted).  Here, Defendants have made no showing of prejudice, nor have they

suggested they did not have actual notice of the claims.  Moreover, Diaz's claims would be

barred by section 1983's statute of limitations were she required to refile.  *See Ceara v. Deacon*,

2014 WL 6674559, at *3 (S.D.N.Y. Nov. 25, 2014) (section 1983 actions subject to three-year

statute of limitations provided by state personal injury law).  Defendants have not provided the

Court with a compelling reason why it should dismiss Diaz's claims due to a short delay of

fifteen days.  The Court denies DANY Defendants' motion to dismiss Diaz's complaint for

failure to effect timely service.

---

[2] As a result of this ruling, the remaining defendants are Flores, John Does #1 and #2, Kelly, and the City.  All claims against the City are addressed in Section E, infra.

**C. Fourth Amendment Violation Claim**

Diaz alleges that Defendants violated her Fourth Amendment rights in violation of section 1983, specifically her right to be free from unreasonable searches and seizures, unlawful telephone surveillance, and arrest without probable cause.  Am. Compl. ¶¶ 76-78.

Diaz has failed to allege facts showing that any of the defendants were involved in the alleged telephone surveillance of her home.  Indeed, Diaz's claims regarding unlawful telephone surveillance are not plausible.  In addition, Diaz has failed to allege the involvement of Kelly in the search and seizure of her home or her detention at the 43rd Precinct, and Kelly may not be held vicariously liable for these alleged violations.  *See Iqbal*, 556 U.S. at 676 (vicarious liability inapplicable to section 1983 suits).  Accordingly, Diaz's claims regarding unlawful telephone surveillance and the Fourth Amendment claim against Kelly are dismissed.

Diaz's claims regarding the allegedly illegal search and seizure are dismissed.  Diaz implies that this search was illegal because the search warrant was invalid, alleging that the search warrant "clearly indicates" that it was not drafted or executed on "November 24, 201[0]," because it contained specific information that could not have been known on that day, and the warrant does not show which judge authorized and signed the warrant.  Am. Compl. ¶¶ 47-50. This allegation is both wholly speculative and conclusory.  The search warrant is clearly dated November 24, 2010, and Diaz has failed to plausibly allege that the warrant was backdated.  Am. Compl. Ex. 1, p. 7.  References in the warrant to information learned that day mirror Diaz's allegations in the complaint: law enforcement officials were present at Diaz's home early that morning, apprehended Castro, and subsequently sought a warrant to search Diaz's home, an office, and two vehicles later in the day.  Indeed, that is what Diaz and her representative demanded.  *See* Am. Compl ¶¶ 30, 32, 41.  The references within the search warrant to

7

information obtained on November 24, 2010 clearly reflect information learned that morning,

before the search was executed.  Finally, Diaz's claim regarding the signature is meritless.  The

search warrant is clearly signed in the appropriate spot, and the fact that Diaz cannot read the

signature on the warrant does not render it invalid.  Diaz's allegations fail to plausibly allege that

the warrant was obtained or signed after November 24, 2010 or is otherwise invalid.

Accordingly, Diaz's claims regarding an unlawful search and seizure are dismissed.  Because

this was the only claim asserted against John Doe #2, he is dismissed from the case.

Diaz has sufficiently alleged a false arrest claim against Flores and John Doe #1.  A

section 1983 claim for false arrest requires a plaintiff to show that (1) she was intentionally

confined, (2) she was conscious of the confinement, (3) she did not consent to the confinement,

and (4) the confinement was not privileged.  *Ackerman v. City of White Plains*, 702 F.3d 15, 19

(2d Cir. 2012).  The existence of probable cause is a complete defense to a claim of false arrest.

*Id.*  Here, however, Defendants have failed to provide any theory of criminal liability for which

probable cause to arrest Diaz might have existed.  They have provided no argument to support

the arrest of Diaz or otherwise explained why the arrest took place.

DANY Defendants argue that Flores is entitled to qualified immunity, and therefore that

the claim should be dismissed, but to prevail on this argument, they must show that "no

reasonable jury, viewing the evidence in the light most favorable to plaintiff, could conclude that

the defendant's actions were objectively reasonable." *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir.

2001); *accord O'Hara v. City of N.Y.*, 570 F. App'x 21, 23 (2d Cir. 2014).  But Defendants'

complete failure to offer any explanation, and given the fact that Diaz's allegations must be taken

as true, there is at present no objectively reasonable basis for Flores to believe his arrest of Diaz

was lawful under the circumstances.

Accordingly, the motions to dismiss the false arrest claim against Flores and John Doe #1 are denied.

### D. Fourteenth Amendment Violation Claim: Deprivation of Property, Equal Protection, and Due Process

Diaz's claim that Defendants deprived her of due process, equal protection, and property in violation of the Fourteenth Amendment are dismissed.

Diaz's Equal Protection Claim alleges that Defendants "sanctioned, encouraged, and utilized an arbitrar[y] and capricious policy and/or practice of keeping Plaintiff Diaz and other individuals similarly situated without being charged with an offense or failing to adjudicate outstanding disciplinary matters in a timely fashion, and failing to equally protect and fairly treat all officers with a sound disciplinary system." Am. Compl. ¶ 85. To prevail on an Equal Protection claim, "[a] plaintiff who cannot claim membership in a protected class must allege 'that the defendants intentionally treated [her] differently from others similarly situated without any rational basis.'" *Helgason v. Doe*, 2011 WL 4089943, at *4 (S.D.N.Y. Sept. 13, 2011) (quoting *Price v. City of N.Y.*, 264 F. App'x 66, 68 (2d Cir. 2008)). Diaz does not allege membership in a constitutionally protected class. But Diaz's allegation that she and others "similarly situated" were subject to an arbitrary and capricious policy is fatal to her Equal Protection claim—she specifically alleges that there are others who were treated in the same manner about which she complains. In response, Diaz states that her reference to similarly situated officers "palpably distinguishes the group of other innocent officers who are left on modified assignment without having their charges brought against them or their cases adjudicated." Diaz City Opp. at 6. But disparate treatment of similarly situated individuals is the crux of an Equal Protection claim, and Diaz has plainly failed to meet this requirement.

In order to prevail on her due process claim, Diaz must allege that she was deprived a protected interest in liberty or property without adequate notice or opportunity to be heard. *Stewart v. City of N.Y.*, 2012 WL 2849779, at \*13 (S.D.N.Y. July 10, 2012). Diaz fails the first element of this test. Diaz does not have a constitutionally protected right to avoid assignment to the VIPER unit. It is established that "[t]here is no constitutionally protected right to work overtime or to have, or not have, a specific position with specific duties in a specific location." *Boland v. Police Dep't of N.Y.*, 2007 WL 4225484, at \*2 (S.D.N.Y. Nov. 29, 2007) (dismissing plaintiff's claim that assignment to the VIPER unit and the attendant loss of overtime or advancement potential constituted a due process violation); *accord Stewart*, 2012 WL 2849779, at \*14 ("Every court in the Second Circuit that has considered the issue of whether there exists a constitutionally protected property interest in overtime has answered in the negative.") (internal citations and alterations omitted) . Accordingly, Diaz's due process claim is dismissed.

It is unclear upon what facts Diaz's deprivation of liberty claim is based. To the extent that it is based on her placement in the VIPER unit, this claim fails for the same reason as explained above regarding her due process claim—because she cannot show a constitutional deprivation. Elsewhere in her complaint, however, Diaz alleges that items were removed from her home during the search on November 24, 2010, and that they have not been returned. Am. Compl. ¶¶ 44, 45. In the event Diaz is basing this claim on this allegation, the claim fails because Diaz has failed to show that New York law does not provide an adequate remedy for the deprivation of her property. *See Mostafa v. City of N.Y.*, 2014 WL 4354689, at \*3 (S.D.N.Y. Sept. 2, 2014).

10

### E. *Monell* Claim

Diaz alleges a municipal liability claim pursuant to *Monell v. Dep't of Soc. Servs. of N.Y*, 436 U.S. 658 (1978), claiming that the City "developed, implemented, enforced, and sanctioned de facto policies, practices and/or customs exhibiting deliberate indifferences to Plaintiff's constitutional rights which caused the violation of such rights." Am. Compl. ¶ 102. The City is not subject to liability under section 1983 on the basis of *respondeat superior*; instead, the City may be held liable for only its own illegal acts. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (internal citations omitted).

Diaz's *Monell* claim arises out of her allegations that Kelly used the VIPER unit as a "disciplinary dumping ground" for individuals on his "disciplinary spreadsheet." Diaz City Opp. at 7. But as discussed above, Diaz has failed to allege the denial of a constitutional right. Even if such a disciplinary policy existed, Diaz has failed to allege that this policy violates any constitutional rights. Consequently, she has failed to allege municipal liability pursuant to *Monell*, and her *Monell* claim is dismissed.

### F. State Law Claims

Diaz alleges state law claims against Defendants for slander, injurious falsehoods, prima facie tort, respondeat superior, and unreasonable search and seizure in violation of the New York State Constitution. Am. Compl. ¶¶ 109-28. These claims are time-barred and must be dismissed. New York law requires Diaz to serve a notice of claim within 90 days of the incident. *See* N.Y. Gen. Mun. Law § 50-e(1); *accord Dingle v. City of N.Y.*, 728 F. Supp. 2d 332, 348-49

11

(S.D.N.Y. 2010) ("Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim."). New York law also requires Diaz to commence state law claims within one year and ninety days from the date of the alleged incident. N.Y. Gen. Mun. Law § 50-i(1). The relevant incident occurred on November 24, 2010, yet Diaz did not file a notice of claim until May 13, 2013, and did not commence the instant action until November 20, 2013.

Diaz attempts to avoid these requirements by asserting a "continuous tort theory," which permits her to properly file a notice of claim within ninety days of the NYPD restoring her to full duty. Am. Compl. ¶ 23. This theory is meritless. None of her state law claims implicate the continuing tort doctrine. *See Bissinger v. City of N.Y.*, 2007 WL 2826756, at \*9 n.2 (S.D.N.Y. Sept. 24, 2007) ("New York's continuing tort doctrine does not extend the limitations period for any continuing pattern of tortious conduct, but rather is limited to certain recognized torts that involve continuing harm.") (internal citation omitted). While Diaz admits that "on its face it appears that the state claims are time barred; for both the notice of claim and her complaint," Diaz DANY Opp. at 10, she urges the Court to consider that she was "constructively imprisoned at her workplace", a theory which she admits "lacks statutory or case law support." *Id.* at 11. This argument is illogical and meritless, and is insufficient to trigger the application of the continuous tort doctrine necessary to save Diaz's state claims from being time-barred. Diaz's failure to timely file both her notice of claim and complaint is fatal to her state law claims, and consequently Defendants' motions to dismiss the state law claims are granted.

## CONCLUSION

For the foregoing reasons, Diaz's claims against Defendants are dismissed, with the exception of her claim against Flores and John Doe #1 for false arrest. The Clerk of Court is directed to terminate the motions at Docket Numbers 35 and 44.

Dated: New York, New York
       February 2, 2015

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

13